UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AARON SCURLOCK, | ) | |
| | ) | |
| Petitioner, | ) | 19 C 2174 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TIFFANIE CLARK, Day-to-Day Warden, Illinois River | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

Aaron Scurlock, an Illinois prisoner convicted of sex crimes against his stepdaughter, petitions for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that his state court attorneys rendered ineffective assistance of counsel. Doc. 1. His claims are without merit, his habeas petition is denied, and a certificate of appealability will not issue.

### Background

A federal habeas court presumes that state court factual findings are correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Jean-Paul v. Douma*, 809 F.3d 354, 360 (7th Cir. 2015) ("A state court's factual finding is unreasonable only if it ignores the clear and convincing weight of the evidence.") (internal quotation marks omitted). The Appellate Court of Illinois is the last state court to adjudicate Scurlock's case on the merits. *People v. Scurlock*, 2012 IL App (3d) 100800-U (Aug. 7, 2012). The following sets forth the facts as that court described them, as supplemented by the trial transcript, as well as the procedural background of the state court and federal habeas proceedings.

1

### A.    The Charges

Scurlock was indicted on sexual assault charges for various offenses against V.W., his stepdaughter.  Doc. 32-4 at ¶ 4.  The indictment charged three counts of predatory criminal sexual assault of a child, alleging that Scurlock placed his penis in V.W.'s mouth when she was ten years old (Count I); placed his finger in her vagina when she was ten years old (Count II); and placed his penis in her vagina when she was eleven years old (Count III).  *Id*. at ¶ 5.  The indictment also charged four counts of criminal sexual assault, alleging that Scurlock placed his penis in V.W.'s vagina when she was thirteen years old (Count IV), fourteen years old (Count V), between fifteen and sixteen years old (Count VI), and sixteen years old (Count VII).  *Ibid*.

### B.    Scurlock's Confession

Before trial, Scurlock moved to suppress a videotaped confession that he had made to the police.  Doc. 32-9 at 87.  The court held a suppression hearing, at which Scurlock testified that the two detectives who interviewed him fed him the details of, and threatened him into giving, a false confession.  *Id*. at 190-198.  Scurlock further testified that the detectives denied his repeated requests for a lawyer, promised him "lesser charges" and the ability to "bond out" that night if he confessed, and told him that he would "rot in jail" if he did not.  *Id*. at 187-194.  The detectives testified that Scurlock did not ask for a lawyer at any point, that they did not make any threats or promises, and that they did not feed him any of the information set forth in his confession.  *Id*. at 128-129, 237-242, 247-249.  The court found that Scurlock's testimony was "incredible" and denied his motion to suppress.  Doc. 32-10 at 21.

### C.    Trial

The case was tried to a jury in 2010.  Doc. 32-11 at 164.  The prosecution presented several witnesses, including V.W. and the two detectives involved in the investigation.

V.W. testified as follows. V.W. first met Scurlock when she was approximately six years old, after which she and her mother moved in with him. Doc. 32-4 at ¶ 8. Some two years later, when V.W. was eight years old, Scurlock first touched her inappropriately. *Ibid*. One night, when her mother was hospitalized for her brother's birth, V.W. had a nightmare and went to Scurlock's bedroom. *Ibid*. Scurlock comforted V.W. and then touched her through her clothes near her chest and vaginal area. *Ibid*.

The next incident occurred a short time later. *Id*. at ¶ 9. Scurlock called V.W. into his bedroom, where he was lying on the bed with his shorts pulled down to mid-thigh. *Ibid*. Scurlock asked V.W. to put her mouth on his penis, and he put his hand on top of her head in a bobbing motion. *Ibid*.

Another incident occurred when V.W. was about ten years old. *Id*. at ¶ 10. One day when V.W. stayed home from school, she was lying down, drifting in and out of sleep, when Scurlock lay down next to her and started touching her while masturbating. *Ibid*.; Doc. 32-11 at 186. Scurlock then pulled down V.W.'s pants, put his mouth on her vagina, and penetrated her vagina with his fingers, causing her to bleed. Doc. 32-4 at ¶ 10.

Scurlock had vaginal intercourse with V.W. for the first time when she was almost eleven years old. *Id*. at ¶ 11; Doc. 32-11 at 192. V.W. was in the bedroom with Scurlock while her two younger siblings were in the bathtub. Doc. 32-4 at ¶ 11. V.W. lay down on the bed, and Scurlock put his penis in her vagina. *Ibid*.; Doc. 32-11 at 194-195.

It then became "pretty routine" for Scurlock to engage in oral and vaginal sex with V.W. Doc. 32-4 at ¶ 11. Scurlock continued to have vaginal and oral sex with V.W. at least once per month when she was twelve, thirteen, and fourteen years old, although she could not remember specific instances from when she was twelve and thirteen because the encounters were "so

routine." Doc. 32-4 at ¶¶ 11-12; Doc. 32-11 at 206-220. Oral sex occurred more frequently than vaginal sex, and V.W. performed sex acts with Scurlock in order to escape punishment. Doc. 32-4 at ¶ 11. For instance, when V.W. was caught sneaking out of the house during her sophomore year of high school, Scurlock asked her to perform ten acts of oral sex in exchange for getting out of a grounding. *Ibid*.

When V.W. was thirteen or fourteen, she began to pick up her siblings from school. *Id*. at ¶ 12. V.W. got home from school about fifteen to twenty minutes before she had to pick up her siblings, during which time she often had sexual contact with Scurlock. *Ibid*. That sexual contact varied and occurred over twenty times. *Ibid*.

The penultimate instance of sexual contact between Scurlock and V.W. occurred in Fall 2006. *Id*. at ¶ 13. As Scurlock was stretching V.W.'s pulled hamstring, he took off her pants and had sex with her. *Ibid*. The final incident occurred in December 2006, when V.W. was sixteen. *Id*. at ¶ 14. Scurlock had sex with V.W. in his bedroom, while V.W. held a pillow over her face. *Ibid*. Afterward, V.W. told Scurlock that she "didn't want this to continue any longer" and threatened to tell her father if it ever happened again. Doc. 32-11 at 230.

In August 2007, V.W. told her father about the sexual contact with Scurlock, and her father called the police. Doc. 32-4 at ¶ 15. V.W. reported the sexual contact to Deputy Sheriff Schwarz of the Will County Sheriff's Office that day, Doc. 32-11 at 240; Doc. 32-12 at 3-4, and to a forensic interviewer from the Will County Child Advocacy Center two days later, Doc. 32-12 at 1-2, 53-54.

Will County Sheriff's Office Detectives Brian O'Leary and Denise Powers testified as follows. Doc. 32-4 at ¶ 16; Doc. 32-12 at 52, 110. The detectives interviewed Scurlock at the police station two days after V.W.'s father's report. Doc. 32-4 at ¶¶ 15-16. Scurlock initially

denied the allegations, but after about ten minutes, he admitted to inappropriate contact with V.W. *Id*. at ¶ 16. Scurlock did not ask for an attorney during the interview and gave a recorded statement after one hour of questioning. *Ibid*. The detectives did not tell Scurlock what to say in his statement, nor did they make any promises or threats in return for his statement. *Id*. at ¶ 17.

The videotape of Scurlock's statement was played for the jury. *Id*. at ¶ 18. In the video, Scurlock admitted that he began to touch V.W. inappropriately when she was about thirteen and describes the inappropriate touching as occurring more than fifty times, progressing from touching outside the clothing, to oral sex, to vaginal intercourse when she was fifteen or sixteen. *Ibid*. Scurlock described the vaginal intercourse as having occurred fewer than thirty times and states that the sexual contact stopped in December 2006 following a discussion in which he and V.W. both decided that the behavior was wrong. *Ibid*.

Scurlock took the stand in his own defense and testified as follows. He had a great relationship with V.W. and never had sexual contact with her. *Id*. at ¶ 20. When Detectives O'Leary and Powers interviewed him regarding allegations of inappropriate touching, he immediately asked for an attorney. *Id*. at ¶ 21. The detectives left the room, and when they returned, they told him that the allegations included "fellatio, cunnilingus, and full intercourse." *Ibid*. Scurlock again requested an attorney, and the detectives again left the room. *Ibid*. When they returned, the detectives told Scurlock that they "knew the inappropriate contact was consensual, and that [he] was not a bad guy." *Ibid*. They also told Scurlock that if he gave them a statement, they would let him out on bond that night and he would get reduced charges, but that if he did not cooperate, he would "'rot' in jail forever." *Ibid*. Scurlock was scared and, "after realizing he had too much responsibility waiting for him at home," he agreed to provide a statement to avoid going to jail. *Ibid*.

The jury found Scurlock guilty on all counts, and the trial court sentenced him to 44 years in prison. *Id*. at ¶ 22.

### D.      Direct Appeal

Scurlock appealed, claiming that (1) the trial court erred when it denied his motion in limine to allow expert testimony regarding coerced false confessions and (2) the evidence was insufficient to prove him guilty beyond a reasonable doubt. Doc. 32-1. The state appellate court affirmed. *People v. Scurlock*, 2012 IL App (3d) 100800-U (Aug. 7, 2012). The Supreme Court of Illinois denied leave to appeal, *People v. Scurlock*, 982 N.E.2d 773 (Ill. 2013), and the United States Supreme Court denied certiorari, *Scurlock v. Illinois*, 571 U.S. 837 (2013).

### E.      State Post-Conviction and Federal Habeas Proceedings

After completing the direct review process, Scurlock brought a *pro se* petition under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*. Doc. 1-1 at 39-88; Doc. 1-2 at 1-55. When the State moved to dismiss the petition, Scurlock filed a supplemental petition claiming that the trial transcript had been falsified. Doc. 1-3 at 17-26. Before ruling on the motion to dismiss, the court found Scurlock unfit to proceed and eventually dismissed his petition without prejudice to refiling upon his fitness being restored. Doc. 23-1 at 2.

Shortly after the state court dismissed his post-conviction petition, Scurlock filed a *pro se* § 2254 habeas petition in this court, arguing that the undue delay in his post-conviction proceedings rendered them ineffective to protect his rights. Doc. 67 at ¶ 6(eee). A few months later, the State moved the state court to find that Scurlock had been restored to fitness. Doc. 23-1 at 4. Reasoning that "[t]he State has addressed the source of the prior delay of Scurlock's state post-conviction proceedings, and that case is moving forward," this court held that the delay occasioned by the fitness determination was not so "inordinate" and "unjustifiable" as to render those proceedings ineffective and thereby excuse his failure to exhaust. Doc. 81 at 4-5 (reported

6

at 2020 WL 5530129 (N.D. Ill. Sept. 15, 2020)). This court dismissed Scurlock's § 2254 petition without prejudice for failure to exhaust, *id*. at 5, and later modified the order to a dismissal with leave to reinstate that invited him to refile his § 2254 petition if the State's fitness motion remained unresolved by the end of March 2021, Doc. 116 (reported at 2021 WL 292851 (N.D. Ill. Jan. 28, 2021)).

In April 2021, Scurlock moved to reinstate his § 2254 petition. Doc. 123. This court confirmed that the State's pending fitness motion remained unresolved and reinstated the petition for resolution on the merits. Doc. 126.

### Discussion

Scurlock seeks habeas relief on fourteen grounds, all alleging ineffective assistance of counsel:

1. Appellate counsel was ineffective for failing to argue on direct appeal that the trial transcript had been falsified. Doc. 1 at 6, 8.

2. Trial counsel was ineffective for failing to move to strike V.W.'s testimony as "physically impossible," and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that respect. *Id*. at 6, 9-10.

3. Trial counsel was ineffective for failing to move to strike V.W.'s testimony as "knowingly false"—as established by V.W.'s and the State's "judicial admissions"—and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that respect. *Id*. at 7, 10-11.

4. Trial counsel was ineffective, and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in these respects, for:

   a) failing to "direct the jury to the fact that V.W.'s testimony contravened the natural laws of physics," *id*. at 7, 11; and

   b) failing to ask the trial court to take judicial notice of the laws of physics and to strike V.W.'s testimony as impossible, *ibid*.

5. Trial counsel was ineffective for failing to move to dismiss the case due to the State's "knowingly prosecuting false criminal charges"—as evidenced by the State's "repeated[] admi[ssions] to the known patent falsehood" of V.W.'s

testimony and Scurlock's confession—and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that respect. *Id.* at 11-13.

6. Trial counsel was ineffective for failing to move to suppress Scurlock's recorded confession on the ground that it was not corroborated, contained facts provided by the detectives, and was coerced, and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that respect. *Id.* at 13.

7. Trial counsel was ineffective for failing to "competently argue" that Scurlock's recorded confession was involuntary and that the detectives lied at the suppression hearing, and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that respect. *Id.* at 13-14.

8. Trial counsel was ineffective for failing to move at trial to suppress Scurlock's recorded confession on the ground that the detectives' testimony "admitted" that the confession was false, and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that respect. *Id.* at 15-16.

9. Trial counsel was ineffective for failing to move to suppress Scurlock's confession on the ground that the State admitted that "there was no probable cause to arrest" when he arrived at the police station, and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that respect. *Id.* at 16-18.

10. Trial counsel was ineffective for failing to move to strike V.W.'s testimony based on her refusal to submit to cross-examination, and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that respect. *Id.* at 18-19.

11. Trial counsel was ineffective for failing to invoke Illinois's *corpus delicti* rule, and appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in that respect. *Id.* at 19-20.

12. Appellate counsel was ineffective for failing to "fully present the evidence and argue" on direct appeal that the evidence was insufficient to prove Scurlock guilty beyond a reasonable doubt. *Id.* at 20-23.

13. Trial counsel was ineffective for failing to impeach V.W. on thirty-one grounds. *Id.* at 23.

14. Trial and appellate counsel were cumulatively ineffective. *Ibid.*

As the Warden acknowledges, Doc. 31 at 20, this court's review is *de novo* under § 2254(b), as no state court has adjudicated the merits of Scurlock's claims. *See Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. *See Vinyard v. United States*, 804 F.3d 1218, 1224 (7th Cir. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984)). A defendant claiming ineffective assistance must show that (1) his attorney's performance was deficient and (2) he suffered prejudice as a result. *See Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015). As to the deficient performance prong, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Blackmon v. Williams*, 823 F.3d 1088, 1102-03 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 688). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (internal quotation marks omitted). "A court's scrutiny of an attorney's performance is 'highly deferential' to eliminate as much as possible the distorting effects of hindsight, and [it] 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Vinyard*, 804 F.3d at 1225 (quoting *Strickland*, 466 U.S. at 689); *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016) ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.") (internal quotation marks omitted). As to the prejudice prong, a defendant must show "a reasonable probability that, but for counsel's [allegedly] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.") (quoting *Strickland*, 466 U.S. at 694).

## I.     Waiver, Admissions, and Fraud on the Court

Before reaching Scurlock's individual claims, the court addresses Scurlock's contentions

that the State and the Warden, at various points in the state court and federal habeas proceedings,

(a) admitted facts and waived arguments against the merits of his claims by failing to sufficiently

contest them, and (b) perpetrated fraud on the court by mischaracterizing his arguments.  Those

contentions have no merit.

Scurlock maintains that the State's state post-conviction motion to dismiss "admitted"

that the trial prosecutor, V.W., and the two detectives all made multiple "binding judicial

admissions" at trial that the evidence against him was fabricated.  Doc. 1 at 6-23; *see also*

Doc. 67 at ¶¶ 26, 59, 72, 97, 100-101; Doc. 135 at ¶¶ 11-12.  According to Scurlock, the State's

motion "cit[ed] no well-pleaded record facts nor authority" in contesting his post-conviction

claims, thereby "waiv[ing] the merits" of "all of the legal issues and claims" he presented,

including his ineffective assistance claims.  Doc. 1-3 at 48, 94; *see also id*. at 37-95; Doc. 1 at

6-23.  That argument fails.

As an initial matter, the State's post-conviction motion to dismiss adequately cited legal

authority and applied that authority to facts in the record in contesting Scurlock's claims.

Doc. 1-1 at 2-7; Doc. 1-3 at 1-14.  More importantly, a litigant does not admit a complaint's

factual allegations or legal conclusions by failing to contest them in a motion to dismiss.  While

the failure to file an *answer* to a civil complaint admits "all well-pleaded facts," *Charter Bank v.

Eckert*, 585 N.E.2d 1304, 1309 (Ill. App. 1992), the same does not hold for a motion to dismiss.

And even "the failure to file an answer does not admit the truth of legal conclusions alleged,"

*ibid*., such as the conclusion that V.W., the trial prosecutor, and the detectives had made

"binding judicial admissions," or that trial and appellate counsel were ineffective. Accordingly, the State's post-conviction motion did not concede any of Scurlock's claims.

In a similar vein, Scurlock contends that the Warden has "waive[d] defenses" to his federal habeas claims by "repeatedly cho[osing] not to dispute the actual factual and legal allegations constituting my claims." Doc. 135 at 8. As Scurlock reasons, this failure "constitute[s] fully knowing and wholly intelligent waiver of the merits of my actual claims," Doc. 67 at ¶ 51, and "amounts to conceding that the facts I stated are true," Doc. 135 at 9. *See* Doc. 67 at 22-90; Doc. 67-1 at 1-44. Scurlock also asserts that the Warden failed to dispute his "actual claims" by mischaracterizing his factual allegations and legal arguments and then responding only to those "Phantom facts and Phantom claims." Doc. 135 at 9; Doc. 67 at ¶¶ 26, 54. The Warden did no such thing. The Warden's answer to Scurlock's habeas petition thoroughly addresses and disputes each of his claims, including his factual allegations. Doc. 31. The fact that the Warden disagrees with Scurlock's legal conclusions—for instance, that V.W.'s testimony alleged physically impossible crimes, Doc. 67 at ¶¶ 54, 58, 68, 93—or uses slightly different language to restate Scurlock's arguments, *id*. at ¶¶ 64, 84-85, does not in any way imply that the Warden failed to dispute Scurlock's "actual" claims.

Scurlock appears to believe that a habeas respondent is deemed to admit any of the petitioner's factual allegations that the respondent does not specifically deny, much like Civil Rule 8(b)(6) provides for a defendant's failure to answer allegations in a complaint. Doc. 67 at ¶ 53; Doc. 135 at ¶ 15. He is mistaken. As this court previously explained, 2021 WL 292851, at *1, Rule 5(b) of the Rules Governing Section 2254 Cases provides only that a respondent's answer must "address the allegations in the petition" and "state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of

limitations."  And as another court observed, "[n]either Rule 5, nor the Advisory Notes, nor

subsequent case law set out any further restrictions on the form of the answer, unlike Federal

Rules of Civil Procedure 8(b) and 8(d), which require fact-by-fact responses."  *Williams v.*

*Calderon*, 52 F.3d 1465, 1483 (9th Cir. 1995); *see also Ebert v. Clarke*, 320 F. Supp. 2d 902,

904 n.4 (D. Neb. 2004) (citing *Williams* for the proposition that a habeas respondent is not

"required to admit or deny each of the petitioner's factual allegations"); *McCrary v. Lee*, 2013

WL 5937420, at *4 (E.D.N.Y. Oct. 29, 2013) ("[U]nlike [Civil] Rule 8(b)(6) … , neither

[Section 2254] Rule 5, nor any other Section 2254 Rule or federal statute, provides that any

allegation in a Section 2254 habeas petition that is not specifically denied or addressed by the

respondent is deemed admitted.").  There is thus no basis to conclude that the Warden's response

to Scurlock's habeas petition "conced[es]" the validity of any of his factual allegations or legal

arguments.  Doc. 135 at 9.

     Last, Scurlock asserts that the Warden's purported misrepresentations of his habeas

claims constitute "fraud on this Court," which "vitiates any defensive claims/arguments [the

Warden] has made."  Doc. 67 at ¶ 36; *see also id*. at ¶¶ 58, 76, 82, 91; Doc. 135 at 14-15.  As

noted, the Warden's response presents a fair synopsis of Scurlock's claims.  Doc. 31.  In any

event, one party's mischaracterization of another party's arguments is not "fraud on the court," a

term that encompasses "only [] the most extraordinary and egregious circumstances and relates

to conduct that might be thought to corrupt the judicial process itself, such as where a party

bribes a judge or inserts bogus documents into the record."  *Citizens for Appropriate Rural*

*Roads v. Foxx*, 815 F.3d 1068, 1080 (7th Cir. 2016); *see also Gleason v. Jansen*, 888 F.3d 847,

853-54 (7th Cir. 2018) (holding that the fact that a party had "lied at trial" was insufficient to

establish fraud on the court); *In re Golf 255, Inc*., 652 F.3d 806, 809 (7th Cir. 2011) ("Examples

[of fraud on the court] are bribery of a judge or exertion of other undue influence on him, jury tampering, and fraudulent submissions by a lawyer for one of the parties in a judicial proceeding, such as tendering documents he knows to be forged or testimony he knows to be perjured.").

In sum, neither the State's state post-conviction motion to dismiss nor the Warden's response to Scurlock's federal habeas petition concede the truth of his factual allegations or the correctness of his legal arguments.

## II.    Falsified Transcript (Claim 1)

In Claim 1, Scurlock challenges appellate counsel's decision not to argue that the trial transcript had been falsified.  Doc. 1 at 6, 8.  Scurlock asserts that the transcript must have been falsified because the prosecutor and the trial judge "concurred with [his] trial counsel that no specific allegations of alleged crimes had been adduced at trial," and yet the transcript includes such allegations.  *Id*. at 6; Doc. 67 at ¶ 41.  Scurlock further posits that the fact that the transcript was falsified establishes "*per se* prejudice," Doc. 1 at 8, Doc. 67 at ¶ 49, meaning that "no showing of prejudice" is required to establish counsel's ineffective assistance, Doc. 1-3 at 22, ¶ 18.

Appellate counsel's performance was not deficient because there was no valid basis to argue that the trial transcript had been falsified.  Scurlock points to various of the prosecutor's and trial judge's statements as "admit[ting]" that "V.W. was unable to provide any specificity of any allegation beyond a claim of 'intercourse.'"  Doc. 1 at 8; Doc. 1-3 at ¶¶ 2-3, 7-8, 11-12; *see also* Doc. 67 at ¶¶ 31, 33, 39, 41 (purporting to detail the prosecutor's and the trial judge's "admissions").  But neither the prosecutor nor the judge conceded, in any of the statements cited by Scurlock, that V.W. had not testified to any specific incidents of sexual contact.  Rather, their statements acknowledge only that V.W. "c[ould ]not give us exact dates and times and places"

for incidents of sexual contact during certain time periods.  Doc. 32-11 at 214 (Prosecutor: "[A]s far as specific days other than the ones I'll go into, *she cannot give us exact dates and times and places* where each of these occurred, other than to say it was an ongoing event that occurred every year of her life for a number of days.") (emphasis added to indicate portion on which Scurlock relies); *see also* Doc. 32-14 at 162 (Prosecutor: "The [witness] did testify to some specifics as alleged in the other counts.  But Judge, just because *she can't come up with specific dates, times and exact occurrences of this -- of the offense*, do[es]n't make it improper for the Court to instruct the jury on those counts."); Doc. 32-13 at 34 (Prosecutor: "[T]he witness stated it [sexual contact] occurred continuously by the defendant's own admission to the age of 16. … She indicated she had sexual intercourse.  The fact that *she can't remember a date or time or be more specific* doesn't mean we haven't met our burden of proof on those allegations."); Doc. 32-14 at 165 (Judge: "The fact that the victim[]'s testimony might have come across -- and *she might have even used the word that the abuse*, which she did describe, had become routine, does not distract, or detract, as I should say, from the ability of the jury to assess her credibility and what manner of assault she was referring to.").

As neither the prosecutor nor the judge "admitted … that no specific allegations were adduced at trial," Doc. 1 at 6, Scurlock's submission that the trial transcript must have been falsified is baseless.  Thus, there is no reasonable probability that the state appellate court would have credited such an argument, which in turn means that Scurlock's appellate counsel was not ineffective for failing to make that argument.  *See Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018) ("[A]n attorney is not ineffective for failing to raise a meritless argument."); *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims."); *United States v. Stewart*, 388 F.3d 1079, 1085 (7th Cir. 2004)

14

("[C]ounsel cannot have been ineffective for failing to pursue what we have concluded would have been a meritless [claim]."); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.") (citing *Strickland*, 466 U.S. at 687).

## III. Admissibility of V.W.'s Testimony (Claims 2, 3, 4, and 10)

Claims 2, 3, 4, and 10 challenge trial counsel's failure to move to strike V.W.'s testimony based on its supposed falsity (Claims 2, 3, and 4) and on her supposed refusal to submit to cross-examination (Claim 10). Because there was no basis to strike V.W.'s testimony, trial counsel was not ineffective for not moving to strike that testimony, and appellate counsel was not ineffective for failing to argue that trial counsel was ineffective in that respect.

### A. Physically Impossible Testimony (Claims 2 and 4)

In Claims 2 and 4, Scurlock argues that trial counsel performed deficiently in failing to move to strike V.W.'s testimony as accusing him of "physically impossible crimes." Doc. 1 at 6-7. In Claim 4, Scurlock challenges trial counsel's failure to request a jury instruction "direct[ing] the jury to the fact that V.W.'s testimony contravened the natural laws of physics." *Id.* at 7. As V.W.'s testimony did not allege physically impossible crimes, there is no reasonable probability that the court would have struck it or directed the jury to disregard it, and counsel did not perform deficiently in failing to move the court to do so.

Scurlock is correct that a jury's credibility findings may be set aside "[w]here testimony is contrary to the laws of nature, or universal human experience." *People v. Coulson,* 149 N.E.2d 96, 99 (Ill. 1958); *see also Mannen v. Norris*, 170 N.E. 273, 275 (Ill. 1930) ("If [the witness's] testimony is contradictory of the laws of nature or universal human experience, so as to be incredible and beyond the limits of human belief … the court is not bound to believe him."). However, a court "may not substitute its judgment for that of the trier of fact on

questions involving the weight of the evidence or the credibility of the witnesses, and [the court] will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt." *People v. Manion*, 367 N.E.2d 1313, 1320 (Ill. 1977) (internal quotation marks omitted); *see also People v. Frieberg*, 589 N.E.2d 508, 524 (Ill. 1992) ("It is the jury's function to determine the accused's guilt or innocence, and this court will not reverse a conviction unless the evidence is so improbable as to justify a reasonable doubt of defendant's guilt. … [I]t is for the jury to weigh the credibility of the witnesses and to resolve conflicts or inconsistencies in their testimony.").

Many of the "physical[] impossib[ilities]" that Scurlock alleges, Doc. 1 at 6, 9-10, are "impossible" only if V.W.'s testimony is interpreted in an acontextual and hyperliteral manner. For instance, V.W. testified that the first time Scurlock had vaginal intercourse with her, she "ended up laying down on the end of the bed so again my butt was hanging off.  And I just laid there while he had sex with me. … I just laid down on the bed and pulled down my pants.  And that's when he – that's when his penis penetrated my vagina."  Doc. 32-11 at 192, 194-195. Scurlock contends that this testimony violates the laws of nature because "it's impossible for V.W. to lay down onto a bed with her butt hanging off unsupported into empty space—she'd fall, and it's [impossible] to do so and pull one's own pants down, shifting one's weight even further off into unsupported space without succumbing to gravity unless one could levitate, and since humans can't levitate, this is an impossible crime."  Doc. 1 at 9.

V.W.'s testimony does not indicate that she was "hanging off unsupported into empty space," as it is fully consistent with her feet being on the floor.  In addition, V.W. had previously testified that the first time Scurlock penetrated her with his fingers, he "moved me to the edge of the bed … He took my legs and moved it so I was laying sideways on the bed so my butt was

hanging off. He had – he had my legs in between his arms on either side." Doc. 32-11 at

186-188. The fact that V.W. later testified that she was positioned "so [that] *again* my butt was

hanging off," *id*. at 192 (emphasis added), strongly suggests that she was in the same position as

the one she had previously described—*i.e.*, that Scurlock was supporting her weight with his

arms. Viewed contextually and consistent with common sense, V.W.'s testimony does not

assume her power to levitate. And Scurlock's claims that V.W.'s testimony could be true only if

she possessed the "super-human abilities of time travel, X-[r]ay [v]ision, levitation, [and] phase

shifting of matter," Doc. 67 at ¶ 51, are similarly unsupported by the record.

The remaining "impossibilities" claimed by Scurlock likewise find no support in the

record. For instance, V.W. testified on cross-examination that she would "go directly" to pick up

her siblings from school "[d]epending on what time I got off the bus," Doc. 32-12 at 25, and she

then testified on redirect that she normally had "[a]bout 15, 20 minutes" between getting home

from school and leaving to pick up her siblings, during which time she had sexual contact with

Scurlock "more often than not," *id*. at 45-46. Challenging that testimony, Scurlock asserts that

"it's impossible to have sexual contact with me at all when she's several blocks away from me

picking up her siblings from school unless she can be in two places at once, which she can't."

Doc. 1 at 10, No. 24. His assertion is meritless.

To begin with, V.W.'s testimony that she *sometimes* picked up her siblings directly after

getting off the bus does not contradict her testimony that she *normally* stopped at home before

picking them up. It follows that her testimony does not require believing that she could "be in

two places at once" in order to have sex with Scurlock and pick up her siblings on a single day.

Moreover, inconsistencies do not render testimony legally incredible. *See People v. Gray*, 91

N.E.3d 876, 888 (Ill. 2017) ("[E]ven contradictory testimony does not necessarily destroy the

credibility of a witness, and it is the task of the trier of fact to determine when, if at all, she testified truthfully. … Minor discrepancies in testimony affect only its weight and will not render it unworthy of belief.") (citations omitted); *People v. Dennis*, 692 N.E.2d 325, 336 (Ill. 1998) (rejecting the State's argument that the defendant's "testimony was incredible and inconsistent," and explaining that "inconsistencies in testimony, as well as credibility of witnesses, even of the defendant, are issues for the trier of fact to resolve"); *People v. Glenn*, 337 N.E.2d 435, 437 (Ill. App. 1975) (holding that "minor discrepancies in a witness' testimony in a criminal prosecution … present only questions of credibility to be determined by the trier of fact" and do not "render[ ] [the witness's] testimony incredible"). Accordingly, the inconsistencies (if any) in V.W.'s testimony do not render it "impossible."

As V.W.'s testimony did not come close to contradicting the "laws of nature, or universal human experience," there is no reasonable probability that the trial court would have granted a motion to strike it on that basis. *Coulson,* 149 N.E.2d at 99. For the same reason, there is no reasonable probability that the trial court would have "directed the jury that [V.W.'s] testimony cannot be believed" as a matter of law. Doc. 1-1 at 77. Trial counsel therefore did not perform deficiently in failing to move to strike V.W.'s testimony as impossible or to ask the court to "direct the jury to the fact that V.W.'s testimony contravened the natural laws of physics," Doc. 1 at 7, and appellate counsel did not perform deficiently in failing to argue that trial counsel was ineffective in that respect. *See Stone*, 86 F.3d at 717.

B.      **Knowingly False Testimony (Claim 3)**

In Claim 3, Scurlock argues that trial counsel was ineffective for failing to move to strike what he characterizes as V.W.'s "knowingly false" testimony, and that appellate counsel was ineffective for failing to argue that trial counsel was ineffective in that respect. Doc. 1 at 7, 10-11. Scurlock's argument rests on the premise that V.W. and the trial prosecutor made

"binding judicial admissions" that her testimony was false. *Ibid*. That argument fails because there is no support in the record for that premise, leaving no possibility that the trial court would have struck V.W.'s testimony as knowingly false.

Scurlock asserts that V.W. "abandoned" her testimony at trial, "which abandonment admitted in court that her accused crimes had not ever occurred; that they were false." *Id*. at 7. In support, Scurlock points to two purported reversals in V.W.'s testimony: (1) V.W. testified on cross-examination that she did not have time to go home between getting off the bus and picking up her younger siblings from middle school, and then testified on redirect that she often had sex with Scurlock between getting home from school and picking up her siblings; and (2) V.W. testified on direct examination that all of the sexual contact with Scurlock occurred at night, and then testified on redirect that sexual contact occurred during the day, before picking up her siblings from school. Doc. 1-1 at 48-50.

The record does not show that V.W. reversed her testimony. Contrary to Scurlock's submission, V.W. did not testify that "the bus schedule was too tight to allow her to stop home most days before getting her siblings from school," *id*. at 49; rather, she testified that she would "go directly" to pick up her siblings "[d]epending on what time I got off the bus," Doc. 32-12 at 25. And contrary to Scurlock's submission, V.W. did not testify that all instances of sexual contact occurred "at night," Doc. 1-1 at 49; rather, she testified that, on the occasions she had sexual contact with Scurlock in the living room, "it would happen at night. … [m]ost of the time." Doc. 32-11 at 217. V.W.'s testimony on redirect that she often had sex with Scurlock between getting home from school and picking up her siblings thus elaborated on, and did not contradict, her testimony on direct and cross-examination. Doc. 32-12 at 46.

Moreover, even if V.W. had reversed her testimony, that would not give rise to a "judicial admission" that her inculpatory testimony was false. As an initial matter, "[t]he fact that a witness has changed [her] testimony … do[es] not conclusively destroy [her] testimony but [is] only [a] factor[] to be considered by the trier of fact in passing upon the credibility of such a witness." *People v. Nelson*, 210 N.E.2d 212, 215 (Ill. 1965); *see also People v. Smith*, 185 N.E.2d 150, 152 (Ill. 1962) ("The fact that this witness changed his testimony does not establish that he was committing perjury … . The circumstances were fully brought out before the jury who had the right to pass upon the witness's credibility."). Moreover, judicial admissions are "deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge," *In re Est. of Rennick*, 692 N.E.2d 1150, 1156 (Ill. 1998), which "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact," *1550 MP Rd. LLC v. Teamsters Loc. Union No. 700*, 131 N.E.3d 99, 110 (Ill. 2019) (internal quotation marks omitted). The fact that a witness is impeached or changes her testimony does not give rise to a judicial admission.

To further support his claim that the State knowingly presented false testimony from V.W., Scurlock contends that the prosecutor "admitted V.W.'s testimony was false" and "declar[ed] V.W. not credible, not truthful" by eliciting testimony from her siblings' teacher that she was ten to fifteen minutes late to pick-up about once per week, Doc. 1 at 7; Doc. 1-1 at 50, after she had testified that she "would get [to pick-up] before [her siblings] or right when they were getting out," Doc. 32-12 at 45. As noted, judicial admissions are "deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *Rennick*, 692 N.E.2d at 1156. That the prosecutor elicited testimony that arguably contradicted a single aspect of V.W.'s testimony does not come close to constituting a judicial admission that

she was lying or that "the State knew [her] testimony was false." Doc. 1 at 7, 10. In any event, the teacher's testimony that V.W. occasionally was late in picking up her siblings *supports* her testimony that she had sexual contact with Scurlock in the fifteen to twenty minutes after she got home from school and before going to pick up, further undermining his argument that the State knew that her testimony was false.

In sum, nothing in V.W.'s testimony or the prosecutor's presentation of evidence indicates that her testimony was false or that the State knowingly presented false testimony. Consequently, there is no reasonable probability that the trial court would have struck V.W.'s testimony as knowingly false. Trial counsel therefore did not perform deficiently in failing to move to strike her testimony on that basis, and appellate counsel did not perform deficiently in failing to raise trial counsel's ineffectiveness in that respect. *See Stone*, 86 F.3d at 717.

### C. Refusal to Submit to Cross-Examination (Claim 10)

In Claim 10, Scurlock challenges trial counsel's failure to move to strike V.W.'s testimony based on her supposed refusal to submit to cross-examination, and appellate counsel's failure to argue that trial counsel was ineffective in that respect. Doc. 1 at 18-19. The premise for that claim is Scurlock's contention that V.W. "flat-out refus[ed] to be effectively cross-examined as to the substance and specifics of her accusations." *Ibid*.

Scurlock's premise is wrong, as V.W. did not refuse to submit to cross-examination. Rather, in the testimony cited by Scurlock, V.W. stated that she could not remember exact dates for some instances of sexual contact, the specific details that she had reported to the Will County Deputy Sheriff and the forensic interviewer, and specific instances of the "routine" sexual contact that occurred when she was twelve through fifteen. Doc. 32-11 at 250; Doc. 32-12 at 1-46. Under Illinois law, a witness who answers that she does not remember has not refused to answer the question. *See People v. Wheatley*, 543 N.E.2d 259, 265 (Ill. App. 1989) (holding that

a witness was subject to cross-examination because, "rather than having refused to answer questions, [the witness] merely testified he did not remember"); *see also People v. Flores*, 538 N.E.2d 481, 489 (Ill. 1989) (holding that a witness was subject to cross-examination regarding his grand jury testimony even though he testified that he did not remember the events he had recounted to the grand jury); *People v. Martinez*, 810 N.E.2d 199, 211 (Ill. App. 2004) (holding that the defendant had "ample opportunity to cross-examine" a witness whose cross-examination revealed a "genuine lack of recollection on germane matters").

Because V.W.'s testimony that she could not recall certain details was not a refusal to submit to cross-examination, there is no reasonable probability that the trial court would have struck her testimony on the ground that she so refused. Trial counsel therefore was not ineffective in failing to move to strike her testimony on that ground, and appellate counsel was not ineffective in failing to raise trial counsel's ineffectiveness in that respect. *See Stone*, 86 F.3d at 717.

## IV.    Use of Scurlock's Confession (Claims 5, 6, 7, 8, 9, and 11)

Claims 5-9 and 11 concern counsels' failures to raise various challenges to the introduction of Scurlock's confession at trial. Because those challenges would have had no merit, Scurlock's claims fail.

### A.    Knowing Prosecution of False Charges (Claim 5)

In Claim 5, Scurlock argues that trial counsel was ineffective in failing to move to dismiss the criminal case due to the State's knowing prosecution of false charges, and that appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in that respect. Doc. 1 at 11-12. In support, Scurlock points to various instances in which the prosecutor and the two detectives supposedly admitted that Scurlock's confession and V.W.'s allegations were false. *Id*. at 12; Doc. 1-2 at 9, 13-14, 50-54. But the record shows that the prosecutor and the

detectives made no such admissions. Accordingly, trial counsel was not ineffective for failing to move to dismiss the case due to the State's knowing prosecution of false charges.

Scurlock contends that Detective O'Leary admitted to "fabricating" and "feeding" him the contents of his videotaped confession, Doc. 1 at 12, when he testified that, during Scurlock's interview at the station, he and Detective Powers went over "some history that was discussed in terms of time frames, ages of the victim and Mr. Scurlock, as well as where things were happening and specifics as to what took place." Doc. 32-9 at 99-100. In context, O'Leary's clearly was referring to the detectives asking Scurlock for information, not feeding him the details on which to premise a confession. *Ibid*. And on redirect, O'Leary clarified that he did not communicate any specific details of V.W.'s allegations—including her age or the time frame or location of the assaults—to Scurlock. *Id*. at 238-242. Indeed, the record shows that O'Leary and Powers consistently testified that they did not tell Scurlock what to say in his confession. *Id*. at 128-129, 238-242, 247-249; Doc. 32-12 at 68-69, 100-101.

Scurlock also cites O'Leary's testimony that, during the interview, he informed Scurlock of "the various allegations that [V.W.] made against him." Doc. 32-12 at 94. But O'Leary clarified on redirect that he informed Scurlock only that V.W. had reported "inappropriate contact" with Scurlock, not any other details. *Id*. at 100-101. There is thus no basis in the record to support Scurlock's assertion that the detectives admitted the "known patent falsehood" of his confession.

There is similarly no basis in the record to support Scurlock's contention that the prosecutor admitted that V.W.'s testimony connected to "special events"—for instance, that Scurlock often requested sex as a birthday present, Doc. 32-11 at 212, or that he made her perform ten acts of oral sex in order to attend a friend's birthday party, *id*. at 210—was

fabricated, Doc. 1 at 12. Scurlock notes that, at a pretrial hearing more than a year before trial, the prosecutor stated that she had interviewed V.W. numerous times and had asked V.W. whether she could "remember anything specific about a Christmas or a specific holiday or a graduation or some family event," but that V.W. had already described all the details she could recall. Doc. 32-10 at 69; Doc. 32-11 at 164. According to Scurlock, that V.W.'s trial testimony recounted instances of sexual contact (a) that were related to special events and (b) that V.W. could not recall before the pretrial hearing establishes that the prosecutor "admit[ted]" that those instances of sexual contact "had not existed prior to [the prosecutor] contributing the idea" of "special events allegations." Doc. 1 at 12. Scurlock's argument has no merit. The fact that V.W. was able at trial to recall additional instances of sexual contact that she had not previously remembered in no way gives rise to a judicial admission by the prosecutor that she had fabricated those instances. *See People v. Janes*, 2020 IL App (4th) 200068-U, ¶¶ 72, 86 (rejecting the defendant's argument that his victim was "an incredible witness … because she revealed new information about the alleged abuse for the first time at trial," as "the jury could have determined that [the victim] previously experienced shame and embarrassment over the abuse, which kept her from fully disclosing all of details").

Finally, Scurlock contends that the prosecutor and the detectives "repeated[ly] reject[ed] V.W.'s own impossible accusations as never actually having happened." Doc. 1 at 12. As to the prosecutor, Scurlock argues that because V.W.'s testimony differed in some respects from his confession, the prosecutor's argument that the confession "was what happened," Doc. 32-10 at 2, "judicially rejected" her testimony, Doc. 1-2 at 53. That argument is unpersuasive, as the prosecutor's statement that Scurlock's confession "was what happened" was made in response to Scurlock's contention that the detectives fabricated his confession. Doc. 32-10 at 2. The

prosecutor's statement therefore does not even remotely suggest—let alone admit—that V.W.'s account of Scurlock's abuse "never actually [] happened." Doc. 1 at 12. To the contrary, the prosecutor's argument that Scurlock confessed strengthened the credibility of V.W.'s testimony.

As to the detectives, Scurlock argues that O'Leary's testimony that he had asked Scurlock during the interview about "what actually took place," Doc. 32-9 at 100, "undeniably reject[ed] V.W.'s accusations as not ever actually [having] happened," Doc. 1 at 12. That argument has no merit. O'Leary's testimony plainly conveyed that he questioned Scurlock about the details of his sexual contact with V.W.; it does not in any way imply that O'Leary believed that V.W.'s accusations were false.

Because the record defeats Scurlock's contention that the prosecutor and the detectives admitted that his confession and V.W.'s testimony were fabricated, there is no reasonable probability that the trial court would have dismissed the case due to the State's knowing prosecution of false charges. Trial counsel therefore did not perform deficiently in failing to move to dismiss the charges on that basis, and appellate counsel did not perform deficiently in failing to raise trial counsel's ineffectiveness in that respect. *See Stone*, 86 F.3d at 717.

### B.    Coercion by Detectives O'Leary and Powers (Claims 6, 7, and 8)

In Claims 6, 7, and 8, Scurlock challenges trial counsel's failure to move to suppress his confession, as well as appellate counsel's failure to raise trial counsel's ineffectiveness in that respect. Doc. 1 at 13-16. (In Claim 6, Scurlock also alleges that the confession was not corroborated. *Id*. at 13. The court addresses that issue in its discussion of Claim 11.) Scurlock presents several theories purporting to establish that the detectives admitted to "providing the 'facts'" of the confession and threatening Scurlock into confessing to them, *id*. at 13-16, none of which have merit. Trial counsel therefore was not ineffective for failing to move to suppress Scurlock's confession based on those theories.

Scurlock repeats his argument that O'Leary's trial testimony—that the police interview included going over "some history" of the sexual contact, Doc. 32-9 at 99-100, and informing Scurlock of "the various allegations that [V.W.] made against him," Doc. 32-12 at 94—admitted that the detectives fabricated the contents of his confession. Doc. 1 at 13-14. As explained above in the discussion of Claim 5, that testimony did not admit that the detectives fabricated Scurlock's confession.

Scurlock presents two additional arguments purporting to establish that the detectives coerced him into giving a false confession. First, Scurlock submits that Powers testified that he "bec[a]me in custody" "[w]hen he advised to the contact he's having with V[.W.]," Doc. 32-9 at 160-161—thereby implying that his arrest was non-discretionary—but O'Leary testified that, after recording Scurlock's confession, he spoke to Powers before deciding to arrest Scurlock, *id*. at 244-245. Scurlock contends that O'Leary's testimony "admitted [that O'Leary] knew Scurlock's DVD confession was false in that when a suspect truly confesses, formal arrest is triggered automatically and that this did not occur in this case, even after the DVD was recorded." Doc 1-3 at 40. While it is not entirely clear what Powers meant in saying that Scurlock "bec[a]me in custody" once he confessed to having sexual contact with V.W., there is no indication that Powers meant that Scurlock's arrest was "triggered automatically" by his confession. Accordingly, the fact that O'Leary solicited Powers's opinion before deciding to arrest Scurlock does not imply—much less "judicial[ly] admi[t]," Doc. 1-2 at 24—that O'Leary knew that the confession was fabricated.

Second, Scurlock maintains that O'Leary's testimony at the suppression hearing "confirm[ed] [] the threats of [his] being thrown in jail to rot … if the DVD confession wasn't made," thereby "admit[ting] that the police had indeed threatened [him] into making their DVD

false confession." Doc. 1-3 at 40. At the suppression hearing, O'Leary testified that about ten minutes into the interview, "after [Scurlock] had implicated himself, he asked me if he was going to jail." Doc. 32-9 at 99. At the very end of the confession, Scurlock asked O'Leary whether he was going to get "some cuffs." Doc. 32-4 at ¶ 19. Scurlock argues that "the *only* way O'Leary could have known Scurlock was asking about the threat of 'jail' is because O'Leary … spoke the threats of 'being cuffed and taken to jail' if their DVD confession wasn't made." Doc. 1-2 at 21.

Scurlock's conclusion does not follow from his premise. O'Leary testified that, shortly after implicating himself, Scurlock—not the detectives—asked about being taken to jail. O'Leary's testimony thus explicitly states the opposite of what Scurlock says it suggests. There is no reasonable probability that the trial court would have suppressed the confession on this theory—which requires discounting O'Leary's testimony as false—because the trial court heard O'Leary's and Scurlock's testimony at the suppression hearing, Doc. 32-9 at 96-102, 117-129, 186-199, was presented with Scurlock's argument that the detectives had coerced the confession, Doc. 32-10 at 10-11, and found Scurlock's testimony "on the question of whether or not he had been misled by the detectives in this case … to be incredible," *id*. at 21.

In sum, the evidence cited by Scurlock fails to support, and in fact undermines, his arguments that the detectives admitted to coercing him into giving a false confession. There is thus no reasonable probability that the trial court would have suppressed the confession had counsel advanced these arguments. Accordingly, trial counsel was not ineffective in failing to move to suppress the confession on these grounds, and appellate counsel was not ineffective in failing to raise trial counsel's ineffectiveness in that respect. *See Stone*, 86 F.3d at 717.

### C. Lack of Probable Cause (Claim 9)

In Claim 9, Scurlock challenges trial counsel's failure to move to suppress his confession as resulting from an arrest made without probable cause, and appellate counsel's failure to raise

trial counsel's ineffectiveness in that respect. Doc. 1 at 16-17. Scurlock contends that his interview at the station was an arrest, and that the detectives lacked probable cause to arrest him because O'Leary "clearly judicially admitted V.W.'s accusations had not taken place, thereby explicitly rejecting V.W.'s accusations." Doc. 1-2 at 35.

"An officer may make a warrantless arrest consistent with the Fourth Amendment if there is probable cause to believe that a crime has been committed." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (internal quotation marks and brackets omitted). "[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Rainsberger v. Benner*, 913 F.3d 640, 648 (7th Cir. 2019). "[A]s long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest … ." *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004) (internal quotation marks omitted).

By the time the detectives interviewed Scurlock at the police station, V.W. had reported Scurlock's abuse to the Will County Deputy Sheriff, Doc. 32-12 at 166-172, and to a forensic interviewer from the Will County Child Advocacy Center, *id*. at 52-58. As discussed above as to Claims 5-8, nothing in the detectives' testimony suggests that they rejected V.W.'s allegations as false. Thus, even assuming that the interview at the station rose to the level of an arrest, the detectives had ample probable cause to arrest Scurlock. *See Tangwall v. Stuckey*, 135 F.3d 510, 519-20 (7th Cir. 1998) (holding that an officer had probable cause to arrest a suspect based on a victim's in-person identification, despite the fact that the suspect's physical appearance did not match a description that the victim had previously provided).

Because the detectives had probable cause to arrest Scurlock before the interview began, a motion to suppress the confession based on a lack of probable cause would have failed. Accordingly, trial counsel was not ineffective in failing to move to suppress the confession on that basis, and appellate counsel was not ineffective in failing to raise trial counsel's ineffectiveness in that respect. *See Stone*, 86 F.3d at 717.

### D. Lack of Corroboration (Claim 11)

In Claim 11, Scurlock argues that trial counsel was ineffective in failing to invoke Illinois's *corpus delicti* rule, which requires confessions to be corroborated by independent evidence, and that appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness in that respect. Doc. 1 at 19-20. That claim has no merit.

The *corpus delicti* rule holds that the commission of a crime "cannot be proven by a defendant's admission, confession, or out-of-court statement alone." *People v. Lara*, 983 N.E.2d 959, 964 (Ill. 2012). Rather, "[w]hen a defendant's confession is part of the *corpus delicti* proof, the State must also provide independent corroborating evidence." *Ibid*. "[T]he independent evidence need only *tend to show* the commission of a crime." *Ibid*.

Scurlock confessed to inappropriately touching V.W. "more than 50 times" when she was between thirteen and sixteen, and he described the sexual contact as progressing from touching her through her clothing, to oral sex, to vaginal intercourse. Doc. 32-4 at ¶ 18. Scurlock further stated in his confession that he "did not use a condom, but instead would ejaculate outside of V.W.," Doc. 32-1 at 9, and that the sexual contact stopped in December 2006 following a discussion with V.W., Doc. 32-4 at ¶ 18. V.W.'s trial testimony described the same progression of sexual contact, ending in December 2006 after a discussion with Scurlock, Doc. 32-11 at 182-196, 205-232, and included specific details about the sexual contact—such as the fact that Scurlock did not use a condom and ejaculated outside of her body, *id*. at 195, 228—that further

29

corroborated his confession. That testimony was more than sufficient to satisfy the *corpus delicti* rule's corroboration requirement. *See Lara*, 983 N.E.2d at 972-74 (holding that a defendant's confession to digitally penetrating an eight-year-old girl was sufficiently corroborated by the victim's testimony that the defendant touched her); *People v. Furby*, 563 N.E.2d 421, 428 (Ill. 1990) ("There is no requirement that the independent evidence and the details of the confession correspond in every particular. What is necessary are facts or circumstances independent of the confession, and consistent therewith, tending to confirm and strengthen the confession.") (internal quotation marks and citation omitted).

As Scurlock's confession was sufficiently corroborated, a motion to suppress the confession under the *corpus delicti* rule would have failed. Thus, trial counsel was not ineffective in failing to move to suppress the confession on that basis, and appellate counsel was not ineffective in failing to raise trial counsel's ineffectiveness in that respect. *See Stone*, 86 F.3d at 717.

## V.     Other Claims

### A.     Failure to Argue Sufficiency of the Evidence (Claim 12)

In Claim 12, Scurlock challenges appellate counsel's failure to "fully and adequately argue" that the evidence presented at trial was insufficient to establish his guilt beyond a reasonable doubt. Doc. 1 at 20-23. Scurlock faults appellate counsel for arguing that "V.W.'s substantive allegations [were] improbable, vague, unconvincing, and contrary to human experience" without specifically contending that her testimony was physically impossible; that she, the prosecutor, and the detectives had all admitted that her and the detectives' testimony was false; and that his confession was uncorroborated. *Id*. at 21-22.

As discussed above as to Claims 2 and 4, the argument that V.W.'s testimony was physically impossible has no merit. As discussed as to Claims 3, 5, 6, 7, and 8, the argument that

V.W.'s and the detectives' testimony was admittedly false is defeated by the record. And as discussed as to Claim 11, Scurlock's confession was corroborated by V.W.'s testimony. Given that all the arguments that Scurlock faults appellate counsel for omitting lack merit, there is no reasonable probability that the appellate court would have reversed his conviction based on insufficiency of the evidence had appellate counsel made those arguments. Appellate counsel was therefore not ineffective in not making them. *See Stone*, 86 F.3d at 717.

### B. Failure to Impeach V.W. on 31 Grounds (Claim 13)

In Claim 13, Scurlock argues that trial counsel was ineffective for failing to impeach V.W. on "31 major points of impeachment." Doc. 1 at 23. This argument fails. Many of the impeachment arguments that Scurlock faults trial counsel for not making are based on his unsupported theories that V.W.'s allegations were physically impossible and that she, the prosecutor, and the detectives admitted that her accusations were false. Doc. 1-1 at 78-88. The remaining grounds for impeachment are extremely weak, consisting of arguments based on mischaracterizations of V.W.'s testimony or focusing on minor differences between her statements to the forensic interviewer and her testimony. *Ibid.* Trial counsel's performance was not deficient because it was a permissible strategic choice to decline to attempt to impeach V.W. on those grounds.

"*Strickland* generally provides a presumption of strategic decision-making by counsel" unless "there was no strategic rationale underlying the errors." *Mitchell v. Enloe*, 817 F.3d 532, 538-39 (7th Cir. 2016) (alterations and internal quotation marks omitted). Scurlock does not overcome that presumption as to the possible impeachment of V.W.'s testimony, given that counsel could have declined to pursue weak lines of impeachment against a sympathetic witness in order to avoid alienating the jury. *See Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995) ("[D]eciding not to cross-examine this sympathetic witness was well within the realm of

sound trial strategy, and we will not, in hindsight, second-guess that decision."); *see also Adams v. Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006) (holding that defense counsel's limited cross-examination was reasonable because more aggressive cross-examination might have generated sympathy for the alleged victim). Because Scurlock does not show that trial counsel's performance fell below an objective standard of reasonableness in declining to pursue certain avenues of impeachment, this claim fails.

## V.     Cumulative Ineffectiveness (Claim 14)

Finally, Scurlock asserts that trial and appellate counsel were cumulatively ineffective for the reasons discussed above. Doc. 1 at 23. Because Scurlock does not show that either trial or appellate counsel was ineffective in any individual respect, his ineffective assistance claims do not rise to the level of deficient performance in the aggregate. *See Hough v. Anderson*, 272 F.3d 878, 907 n.14 (7th Cir. 2001) ("[I]f there are no errors or a single error, there can be no cumulative error.") (quoting *United States v. Allen*, 269 F.3d 842, 846 (7th Cir. 2001)); *United States v. Guerrero*, 938 F.2d 725, 731 (7th Cir. 1991) ("[B]ecause we are convinced that [the defendant's] previous arguments [of ineffective assistance] were meritless, the defendant's final argument that the cumulative effect of his trial counsel's errors prejudiced him also fails."); *see also Cook v. Foster*, 948 F.3d 896, 908 (7th Cir. 2020) (holding that, for the purpose of "consider[ing] the cumulative effect of counsel's errors … we set aside any alleged error for which [counsel's] performance did not fall below the constitutional minimum").

## Conclusion

Because Scurlock's claims are meritless, his habeas petition and his request for an evidentiary hearing, Doc. 135 at 25, are denied. Rule 11(a) of the Rules Governing Section 2254 Cases states that "[t]he district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). The applicable standard is as follows:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted).

This court's denial of Scurlock's habeas petition relies on settled precedent and the application of that precedent to his petition does not present difficult or close questions, and so the petition does not meet the standard for granting a certificate of appealability. The court therefore denies a certificate of appealability.

April 27, 2022

_____
United States District Judge